<div style="margin-left:margin">COMMERCIAL BANK v. MARTIN.</div>

their desire for such a course. No such request is shown; nor is it proved that the defendants have sustained any damage, by the not resorting to this extreme remedy.

As regards the debt secured by the *Nailor* note, we are not prepared to say that the court erred. That note remains entirely unaccounted for, though *Nailor*, as is proved, was solvent for a considerable time afterwards. The plaintiffs have either collected it, or have lost its amount by negligence.

It is therefore decreed that, the judgment of the court below be reversed, so far only as relates to so much of the suit of the plaintiffs as claims the recovery of the amount of the note for $3,377 93, due the 3d July, 1840, and in the petition particularly described; and it is further decreed that, upon said note there be judgment in favor of the said Commercial Bank of New Orleans, against the said *Martin, Pleasants & Co.* and against *John Martin,* —— *Pleasants,* and *Hugh Wilson,* partners of said firm, *in solido,* for the sum of $3,377 93, with interest thereon, from the 3d day of July, 1840, until paid, and the costs in both courts.

---

## SAUVINET v. THE CITY OF NEW ORLEANS.

Where a party has recourse to an injunction he must disclose all the facts of his case, or it will be presumed that those not disclosed would make against him, if known.

APPEAL from the District Court of the First District, *Buchanan,* J. *Marsoudet,* for the plaintiff. *Morel,* for the appellants.

The judgment of the court was pronounced by

ROST, J. On the 29th of January, 1834, *Lino de la Rosa* purchased of the mayor, aldermen and inhabitants of the city of New Orleans, a town lot, and gave them, in consideration thereof, his five promissory notes, to the order of, and endorsed by, *Juan Castellano,* payable at from one to five years from date. These notes were secured by mortgage on the property sold, and the act of sale contained a stipulation that said property should not be alienated to the prejudice of the vendors' mortgage. On the 21st of March, 1839, the vendors instituted a suit against *Lino de la Rosa* on the note given by him for the second instalment, and obtained judgment for the balance due thereon, on the 8th of November, 1844. The plaintiff has enjoined the execution issued under that judgment, and given bond as the law requires, with *Francis Huet* as surety.

He alleges that *Lino de la Rosa* sold the lot seized to *B. Beauregard,* who sold it to *Suares,* each purchaser assuming the payment of the notes of *Lino de la Rosa* to the corporation : That *Suares* died, leaving the second and third notes due and unpaid ; that *Beauregard* was compelled to pay, *and did pay those notes* to the mayor, aldermen and inhabitants of the city of New Orleans, and that he subsequently obtained upon them an order of seizure, under which the lot was sold and the proceeds of the sale received by him : That the plaintiff has inherited said lot from his brother, *Joseph Sauvinet,* and that when the latter purchased it, it was free from all incumbrances, the mortgages previously existing upon it in favor of the corporation, having been cancelled and annulled by the recorder of mortgages. He finally avers that the note on which judgment was

rendered against *Lino de la Rosa* is one of those which had been previously paid by *Beauregard*, and that said judgment is null and void, because it was obtained through collusion and fraud.

The defendants answered that the allegations upon which the injunction had been granted were false, malicious, and without foundation, and prayed that it might be dissolved. The court below perpetuated the injunction, and the defendants appealed.

The remedy by injunction is an equity proceeding, and whoever resorts to it should tell the whole truth, and make a full disclosure of the facts of his case. If he fail to do so, courts of justice will presume that the facts kept out of view, would make against him, if they were known. The plaintiff alleges, as his main ground of action, that *Suares* did not pay the second and third notes of *Lino de la Rosa*; that they were protested for non-payment; that *B. Beauregard* was obliged to pay those notes, and *that he did pay them*. *The fact of the payment* by *Beauregard* to the mayor, aldermen and inhabitants of New Orleans, is the one upon which the case turns, and it was incumbent upon the plaintiff to make it certain. The only evidence offered on that subject is, the presumption resulting from the fact that he was at one time in possession of those notes, without a subrogation from the defendants to him. Even giving effect to the testimony of *Buisson*, the sheriff, the admissibility of which is at least doubtful, the declaration made by *Séré* to him does not prove the payment of the notes, nor does it bring home to the defendants the knowledge that *Beauregard* was in possession of them. *Séré*, the comptroller of the sinking fund, in whose keeping the note in controversy was, died in 1842 or 1843, and his successor testifies that *Beauregard* never was the attorney of the defendants; that when he, the witness, was appointed comptroller, finding by the books that this note had not been paid, he remarked to *Beauregard* that it had been lost. *Beauregard* replied *that the matter had been settled*. Without offering the testimony of *Beauregard*, or any further evidence, the plaintiff has left us to discover the meaning of that equivocal answer.

The order of seizure obtained by *Beauregard* bears date the 1st of February, 1837, and he states, in his petition, that the two notes of *Lino de la Rosa*, assumed by *Suares*, have been paid by him. The sale of the sheriff to *Marsoudet*, under that seizure, was executed on the 19th of April, 1837. The identity of the note in controversy with one of those on which *Beauregard* obtained the order of seizure, is fully proved; but the presumption of payment arising from his possession of this note, is destroyed by the fact that there is upon it a receipt in these words :

" *Reçu de B. Beauregard trois-cents piastres à valoir sur ce billet.*

Nelle. Orleans, le 7 Juin, 1837. (Signed) LOUIS SÉRÉ."

Five months after the filing of *Beauregard's* petition for an order of seizure, and six or seven weeks after the date of the sale to *Marsoudet*, that note was in the possession of the defendants, and *Beauregard* paid them $300 on account of it. We have looked in vain in the record for evidence of *Beauregard's* possession of the note, subsequent to that time ; the only place in which his name appears is upon a check of $70, drawn by him on the Union Bank, and *unpaid*. Whatever this may prove, it assuredly does not prove a payment. The presumption is that, if the check had been paid, its amount was to be deducted from the balance due on the note ; and the fact that it bears date more than seven months after the institution of the suit against *Lino de la Rosa*, furnishes

SAUVINET
v.
CITY OF NEW
ORLEANS.

additional evidence that the note has never been paid, and that it was at that time in the rightful possession of the defendants.

The allegation that the judgment rendered in that suit was obtained through the collusion and frauds of the parties to it, is not sustained by the evidence. As it has not been shown that the note had been paid, *Lino de la Rosa* could not be expected to know that it had, and, having no defence to make, he did wisely not to incur the expense of employing counsel. Through the oversight or neglect of the plaintiffs, the suit was pending five years before the judgment by default was made final. The *ayans-cause* of the present plaintiff had ample opportunities' to intervene, if they had deemed an intervention necessary to the preservation of their rights. If the fact that *Lino de la Rosa* failed to give notice of the suit to *B. Beauregard*, is to be considered as creating a presumption of fraud, fraud must also be presumed on the part of the plaintiff in injunction, for he has, under similar circumstances, failed to give notice to *Beauregard*, and has made no attempt to avail himself of his testimony.

The note sued on being unpaid, the mortgage given to secure it could not be raised, and is still in force. It may be true that the purchaser is bound for nothing beyond the price of the adjudication; and when a case is presented in which the purchaser *has paid* the whole price of the adjudication, the court will have to determine that question. This is not such a case.

The circumstances under which *Joseph Sauvinet* acquired the property have been carefully kept out of the record, and we have no means of judging of the knowledge he had of the transactions which have given rise to this controversy, or of the relations which may have existed between him and the parties to them; but we find that he was the seizing creditor in the execution under which the property was sold, and that he retained out of the price $3748 25 on account of his debt. Out of that sum he was bound to pay the claim of the defendants, and he must accordingly pay it, or let the defendants' process have its course. The cancelling of the mortgage, whether it originated in error or in any other cause, has done him no injury.

It is therefore ordered that the judgment of the District Court be reversed, the injunction dissolved, and the defendants allowed to proceed under their execution, the plaintiffs paying costs in both courts. It is further ordered that the defendants recover, *in solido*, from the plaintiff, and *Francis Huet*, his surety in the injunction bond, interest at the rate of five per cent per annum on $1338 20, from the 5th day of March, 1845, till paid.